Fecteau, J.
This is an action by the plaintiffs against its first-party insurers covering a period of approximately the last 40 to 50 years seeking reimbursement from these insurers for the costs of pollution remediation. In connection with this action, the plaintiff filed a second Rule 34 request upon the London Market Insurers, which was generally the provider of the first excess layer of coverage above the primary layer for a significant number of the early years of the period in question. Among issues central to this controversy is the definition of the event that *87 triggers coverage, as well as a “property owned” exclusion. The policies in question were generally “occurrence” policies, with the policy definition of “occurrence” in a number of policies being “a series of occurrences from a single event.” The plaintiff seeks by the Rule 34 request to acquire documents, from records within the possession, custody or control of the defendant, showing the understanding of the defendants of the meaning of the word “occurrence” and its purpose or intent in agreeing to the use of this form of coverage. Moreover the plaintiff seeks an order that requires the defendant to obtain any documents compliant with its request from any and all files held by any and all of its American legal counsel providing coverage advice and defense, as well as the Lloyd’s Underwriters Fire and Non-Marine Association.
The defendant asserts many objections to these requests, but chiefly among them are that such documents are not relevant, since the word “occurrence” can be interpreted by its commonly understood meaning and is not ambiguous. What may be relevant is ultimately determined by the trial judge and that standard is not the single measure of what may be discoverable. Indeed, discovery of information and documents is permissible even if inadmissible as evidence, so long as it is reasonably calculated to lead to admissible evidence. If, in fact, the court was to find the meaning of “occurrence” to be ambiguous, the understanding and intent of the parties is relevant in the construction of its meaning. Therefore, some documents beyond which may have existed in the insurer’s file “specific to” this insured is discoverable. Certainly any non-privileged documents within the corporate[1] custody of the defendant is discoverable. Whether the defendant will be ordered to communicate with its legal counsel for document searches is presently premature, however, although a search for documents that were created by the defendant independent of communication to or from its coverage counsel may ultimately prove necessary. Also given the alleged function of the Fire & Non-Marine Association of Lloyd’s as an author or adjunct consultant to the underwriters on policy forms, or that the underwriters subscribe to services provided by the association, documents compliant with these requests may ultimately be ordered provided, but on the record as it presently exists, this court does not have an adequate foundation to find that the defendant has a sufficiently-controlling interest in or relationship with the association that would permit the court to order the association to provide documents rather than order the defendant to provide documents in its control including those that may have been generated by the association.
Frankly, the court has struggled, since arguments by counsel were heard, with the approach taken by the plaintiffs in their motion. Granted, Rule 30A of the Superior Court does allow the option to which the plaintiffs alludes in footnote 4 of their brief. However, the arguments they make are general and thematic in nature, cutting across several of the requests and the defendant’s objections thereto. Moreover, although the plaintiff did incorporate the defendant’s response as an appendix item, it did not include the definitions and instructions it sought to impose upon the defendant and to which many objections were interposed. This justice has found the plaintiffs’ approach to be conceptually difficult in its present form, with some limited exceptions, such as requests nos. 10 and 11, production of which is ordered. In addition, the court finds some of the plaintiff requests, as written, to be broad in the extreme; for example, request no. 9. The defendant’s objection as to overbreadth is sustained with respect to this request. Others require, if granted, the defendant to search files of every risk it has insured and reaching back over 40 years. Such breadth of search will not be required.
Notwithstanding the above discussion, it is the intent of the court to permit the plaintiffs some latitude in obtaining documentary evidence for investigation of the coverage issues in this case, so long as the burden is not oppressive. For example, the defendant is ordered to search any central repository of policy forms and/or history for documents generated by it and not privileged attorney-client communication with respect to request nos. 1, 2, 3, 7 and 8. Its contention or objection that it should be allowed to limit its search to NEES-specific files is overruled. Should such a search prove unavailing, then it is to conduct a search for the files kept by it concerning American utilities it insured during the relevant time period and by or against which environmental claims have or had been made for which the defendant’s coverage was similar to the policies and clauses at issue herein. Should this step be necessary, it shall compile a list of the names of its insureds, the years for which the insurance was effective, the nature of the coverage dispute, the name of any lawsuit filed as a result and the jurisdiction where suit was filed. The list shall be provided to plaintiffs’ counsel.
With respect to request nos. 4 and 5, production is ordered if such documents are in the present possession, custody or control of the defendant. With respect to request no. 6, the defendant is ordered to produce any such “circulars” generated during the referenced years within its present possession, custody or control that pertain, explain or relate to the terms “occurrence ’’and “event” as such are used in the grant of coverage without regard to whether they may be contained in the “broad form” or otherwise, and the "owned-property” exclusion.

 The court is mindful of the rather unique marketplace within which Lloyd’s functions, and the relationship(s) of one or more syndicate of investors with an underwriter and the brokering of risks to one or more syndicate through the underwriter-broker relationship.